# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2011

No. 09-30925

Lyle W. Cayce
Clerk

PUBLIC CITIZEN INC.; WILLIAM N. GEE, III; WILLIAM N. GEE, III, LTD.; MORRIS BART; MORRIS BART, L.L.C.,

Plaintiffs–Appellants,

v.

LOUISIANA ATTORNEY DISCIPLINARY BOARD; BILLY R. PESNELL, in his official capacity as Chair of the Louisiana Attorney Disciplinary Board; CHARLES B. PLATTSMIER, in his official capacity as Chief Disciplinary Counsel for the Louisiana Attorney Disciplinary Board's Office of Disciplinary Counsel,

Defendants–Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Before the court is a First Amendment challenge to rules governing attorney advertising in Louisiana. Various Louisiana attorneys and law firms, as well as a national nonprofit organization with Louisiana members, filed suit against the Louisiana Attorney Discipline Board (LADB), a body tasked with investigating lawyer misconduct and making discipline recommendations to the Supreme Court of Louisiana, and two LADB officers. The plaintiffs argued that certain Louisiana Rules of Professional Conduct unconstitutionally infringe on

the commercial speech of Louisiana lawyers. The district court granted partial summary judgment to the plaintiffs and partial summary judgment to the defendants. Five plaintiffs appealed, continuing to challenge the constitutionality of six Louisiana rules. We AFFIRM IN PART and REVERSE IN PART.

## FACTS AND PROCEEDINGS

In 2006, the Louisiana legislature adopted a resolution directing the Louisiana Supreme Court to study attorney advertising and to revise the related Rules of Professional Conduct. The Louisiana Supreme Court created a committee (LSCT Committee), the membership of which overlapped with that of the Louisiana State Bar Association's existing Rules of Professional Conduct Committee (LSBA Committee). The LSBA Committee was, at that time, already reviewing Louisiana's attorney advertising rules. At the request of the court, the LSBA Committee continued its work with the goal of submitting a set of proposed attorney advertising rules to the LSCT Committee for review.

The LSBA Committee met four times and assembled a series of proposals, which it eventually posted on the LSBA website for public comment. These proposals relied heavily on the rules governing attorney advertising in New York and Florida, as well as a survey of Florida residents undertaken at the request of the Florida Bar Association. The committee also conducted four public hearings in Shreveport, Baton Rouge, New Orleans, and Lafayette. In response to the information it received from these sources, the LSBA Committee added a prohibition on the "portrayal of a . . . jury" in an unsolicited communication to its proposed rules and narrowed the scope of various other rules. The LSBA Committee submitted the revised proposals to the LSCT Committee, which recommended two changes, both of which were adopted and neither of which is relevant to this appeal. The Louisiana Supreme Court then accepted the

proposed rules without change and incorporated them into Rule 7 of the Louisiana Rules of Professional Conduct (Louisiana Rules).

Shortly thereafter, two challenges to the constitutionality of the new rules were filed in federal district court and were ultimately consolidated. In response to these lawsuits, the Louisiana Supreme Court postponed the effective date of the rules from July 2009 to October 2009 to "allow the LSBA and the Court to further study certain rules in light of the constitutional challenges that have been raised." The district court continued the consolidated action while the LSBA Committee undertook further study of perceptions of attorney advertising within the state.

It conducted a survey of Louisiana residents and a survey of members of the Louisiana Bar Association (Bar Members) regarding both groups' perceptions of attorney advertising within the state. The survey of Louisiana residents was conducted by telephone and yielded 600 responses from randomly-selected Louisianians from all regions of the state. It was approximately twelve minutes and thirty seconds long and consisted of thirty-two questions. A web survey sent by e-mail to nearly 18,000 Bar Members resulted in almost four thousand completed responses. It contained thirty-one questions. The LSBA Committee also held three focus group discussions, which involved a total of twenty-five respondents and were held in New Orleans, Lafayette, and Shreveport.

The LSBA Committee ultimately presented a report of its findings and conclusions to the Louisiana Supreme Court. The report endorsed the majority of the Louisiana Rules but recommended certain modifications making some rules more stringent and others less so. The Supreme Court adopted all of the proposed revisions and reissued the rules with a press release confirming their October 2009 effective date.

The district court took up the case again.  It denied LADB's motion to dismiss for lack of jurisdiction, finding LADB's arguments that the dispute was unripe and that the various plaintiffs lacked standing to be without merit.  It then granted partial summary judgment to each group of plaintiffs and partial summary judgment to LADB and its officers.  Of the three summary judgment rulings, only one was appealed.  Public Citizen, Inc., Morris Bart, Morris Bart LLC, William N. Gee, III, and William N. Gee, III, Ltd. (collectively, the "Louisiana Plaintiffs"), maintain that six sub-parts of Rule 7.2(c) constitute unconstitutional restrictions on commercial speech.  Rule 7.2(c) restricts the content of all advertisements and unsolicited written communications concerning a lawyer's services.  The portions challenged on appeal are:

> Rule 7.2(c)(1)(D) prohibiting communications that "contain[] a reference or testimonial to past successes or results obtained, except as allowed in the Rule regulating information about a lawyer's services provided upon request;"
>
> Rule 7.2(c)(1)(E) prohibiting communications that "promise[] results;"
>
> Rule 7.2(c)(1)(I) prohibiting communications that "include[] a portrayal of a client by a non-client without disclaimer of such, as required by Rule 7.2(c)(10), or the depiction of any events or scenes or pictures that are not actual or authentic without disclaimer of such, as required by Rule 7.2(c)(10);"
>
> Rule 7.2(c)(1)(J) prohibiting communications that "include[] the portrayal of a judge or a jury;"[1]
>
> Rule 7.2(c)(1)(L) prohibiting communications that "utilize[] a nickname, moniker, motto or trade name that states or implies an ability to obtain results in a matter;"
>
> Rule 7.2(c)(10) requiring "[a]ny words or statements required by these Rules to appear in an advertisement or unsolicited written

---

[1] Plaintiffs do not challenge the other prohibitions imposed by this rule.

4

communication must be clearly legible if written or intelligible if spoken aloud. All disclosures and disclaimers required by these Rules shall be clear and conspicuous. Written disclosures and disclaimers shall use a print size at least as large as the largest print size used in the advertisement or unsolicited written communication, and, if televised or displayed electronically, shall be displayed for a sufficient time to enable the viewer to easily see and read the disclosure or disclaimer. Spoken disclosures and disclaimers shall be plainly audible and spoken at the same or slower rate of speed as the other spoken content of the advertisement. All disclosures and disclaimers used in advertisements that are televised or displayed electronically shall be both spoken aloud and written legibly."[2]

The court will review the constitutionality of each of these rules *seriatim*.[3]

## STANDARD OF REVIEW

We review the district court's decision to grant a motion for summary judgment *de novo.  Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## DISCUSSION

The United States Supreme Court recognized that the First Amendment's protections apply to commercial speech in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 770 (1976). It later elaborated that this type of speech merits only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment

---

[2] The Louisiana Plaintiffs only challenge the portions of this rule that dictate font size, speed of speech, and that disclaimers be spoken and written in televised and electronic advertisements.

[3] The Louisiana Plaintiffs' opening brief erroneously referred to Rule 7.5(b)(2)(C) instead of Rule 7.2(c)(10). Both the opposition brief and the reply brief acknowledged this error. The court therefore reviews Rule 7.2(c)(10).

values, . . . allowing modes of regulation that might be impermissible in the realm of noncommercial expression." *Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 456 (1978). The Court specifically applied First Amendment protections to attorney advertising in *Bates v. State Bar of Arizona*, "holding that advertising by attorneys may not be subjected to blanket suppression . . . [but] not . . . that advertising by attorneys may not be regulated in any way." 433 U.S. 350, 383 (1977). It encouraged the bar to "assur[e] that advertising by attorneys flows both freely and cleanly." *Id.* at 384.

The Court later clarified that different types of commercial speech merit different levels of protection. Advertising that "is inherently likely to deceive or where the record indicates that a particular form or method . . . of advertising has in fact been deceptive" receives no protection and the State may prohibit it entirely. *In re R.M.J.*, 455 U.S. 191, 202 (1982). Advertising that is potentially misleading—because it "may be presented in a way that is not deceptive"—may be regulated if it satisfies one of two standards. *See id.* at 203; *see also Zauderer v. Office of Disciplinary Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985). A regulation that restricts potentially misleading commercial speech will pass constitutional muster if "the regulation directly advances a substantial government interest" and "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980). A regulation that imposes a disclosure obligation on a potentially misleading form of advertising will survive First Amendment review if the required disclosure is "reasonably related to the State's interest in preventing deception of consumers." *Zauderer*, 471 U.S. at 651.

LADB, as "the party seeking to uphold a restriction on commercial speech[,] carries the burden of justifying it." *Bolger v. Youngs Drug Prods. Corp.*,

6

463 U.S. 60, 71 n.20 (1983).  Its burden is a "heavy" one, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996), that cannot be satisfied "by mere speculation or conjecture," *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993).

**A.     Character of the Commercial Speech Targeted by the Louisiana Rules**

To determine whether the rules challenged on appeal are constitutional regulations of commercial speech, the court must first discuss the nature of the speech targeted by each rule: whether it concerns unlawful activity or is inherently misleading, or whether it is only potentially misleading or not misleading.  *Cent. Hudson*, 447 U.S. at 563–64.  Rule 7.2(c)(1)(E) bars communications that "promise[] results."  The district court found that "[t]he plain text of th[is] Rule prohibits only communications that are inherently misleading and untruthful." *Public Citizen, Inc. v. La. Att'y Discipline Bd.*, 642 F. Supp. 2d 539, 553–54 (E.D. La. 2009).  This court arrives at the same conclusion.  A promise that a party will prevail in a future case is necessarily false and deceptive.  No attorney can guarantee future results.  Because these communications are necessarily misleading, LADB may freely regulate them and Rule 7.2(c)(1)(E) is not an unconstitutional restriction on commercial speech. *See In re R.M.J.*, 455 U.S. at 202.

The other five rules challenged by the Louisiana Plaintiffs govern attorney communications that: contain a reference or testimonial to past successes or results (Rule 7.2(c)(1)(D)); use actors to portray clients or reenactments of events without a disclaimer (Rule 7.2(c)(1)(I)); depict a judge or jury (Rule 7.2(c)(1)(J)); employ a nickname or motto that states or implies an ability to obtain results (Rule 7.2(c)(1)(L)); or require a disclaimer under the Louisiana Rules (Rule 7.2(c)(10)).  This court holds that the communications targeted by these rules may be presented in a non-deceptive manner and are not "inherently likely to

7

deceive" the public. *See In re R.M.J.*, 455 U.S. at 202.  A depiction of a scene or picture can be presented in a non-deceptive way in an attorney advertisement.[4] *See Zauderer*, 471 U.S. at 647.  The portrayal of a judge in an advertisement may also be presented in a way that is not deceptive. *See Alexander v. Cahill*, 598 F.3d 79, 92–95 (2d Cir. 2010), *cert. denied*, 79 U.S.L.W. 3102 (2010) (reviewing advertisement that "depicted a judge in the courtroom and stated that the judge is there to make sure [the trial] is fair") (quotations omitted) (alteration in original).  Further, and as the district court determined, it is possible for an attorney to present past results in a manner that is not misleading.  *Public Citizen*, 642 F. Supp. 2d at 553.  Finally, it is similarly obvious that a nickname or motto that might *imply* an ability to obtain results can be employed in a non-deceptive fashion.

Because these five challenged rules all target speech that is only potentially misleading, the First Amendment is implicated.  The court must review these Louisiana Rules under *Central Hudson* or *Zauderer*.  In accordance with these cases, we apply *Central Hudson* to the speech restrictions in Rules 7.2(c)(1)(D), (J), and (L) and *Zauderer* to the disclosure obligations set forth in Rules 7.2(c)(1)(I) and (c)(10).

## B.    Applying *Central Hudson* to Advertising Restrictions

Under *Central Hudson*, a restriction on commercial speech survives First Amendment scrutiny if: (1) "the asserted governmental interest is substantial," (2) the regulation "directly advances" that interest, and (3) the regulation "is not more extensive than is necessary to serve that interest." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002) (internal quotation omitted).  This test is

---

[4] Because we hold that at least one type of speech that triggers Rule 7.2(c)(10)'s disclaimer formatting requirements is potentially misleading, we need not address whether any other triggering speech is also potentially misleading.

motivated by the principle that "people will perceive their own best interests if only they are well enough informed, and . . . the best means to that end is to open the channels of communication rather than to close them." *Va. Bd. of Pharmacy*, 425 U.S. at 770. "Even when advertising communicates only an incomplete version of the relevant facts, the First Amendment presumes that some accurate information is better than no information at all." *Central Hudson*, 447 U.S. at 562 (citation omitted).

1.     *Substantial Government Interest*

The first prong of *Central Hudson* requires LADB to offer a substantial government interest that is advanced by the challenged restrictions. *See W. States Med. Ctr.*, 535 U.S. at 367. "Unlike rational basis review, the *Central Hudson* standard does not permit [a court] to supplant the precise interests put forward by the State with other suppositions." *Edenfield*, 507 U.S. at 768. We are therefore confined to reviewing the government interests that LADB has actually put forward.

The 2009 revisions to the Louisiana Rules have a complicated procedural history involving a number of state bodies, each asserting various government interests supporting the creation and adoption of the new rules. The Louisiana Legislature's resolution demanding that the Louisiana Supreme Court evaluate the rules on lawyer advertising asserted that revisions were necessary because lawyer advertising had "become undignified" and "threaten[ed] the way the public perceives lawyers." It pressed for new rules "to preserve the integrity of the legal profession, to protect the public from unethical and potentially misleading forms of lawyer advertising, and to prevent erosion of the public's confidence and trust in the judicial system." The Louisiana Supreme Court, when it adopted the new rules, asserted that their purpose was "to protect the

9

public from unethical forms of lawyer advertising." In two later press releases—the first postponing the effective date of the new rules and the second accompanying a revised version of the new rules—the court reiterated the legislature's concerns that lawyer advertising had "become undignified and pose[d] a threat to the way the public perceives lawyers." It also stated that it had adopted the new rules "to preserve the integrity of the legal profession, to protect the public from unethical and potentially misleading lawyer advertising, and to prevent erosion of the public's confidence and trust in the judicial system."

The Supreme Court has recognized as substantial the government's interests in "ensuring the accuracy of commercial information in the marketplace" and "maintaining standards of ethical conduct in the licensed professions." *Edenfield*, 507 U.S. at 769–70. It has also characterized a State's interest "in regulating lawyers [a]s especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) (citations omitted). By contrast, an interest in preserving attorneys' dignity in their communications with the public is not substantial. *Zauderer*, 471 U.S. at 647–48. "[T]he mere possibility that some members of the population might find advertising embarrassing or offensive cannot justify suppressing it. The same must hold true for advertising that some members of the bar might find beneath their dignity." *Id.* at 648.

In light of this precedent, the court holds that LADB has asserted at least two substantial government interests: protecting the public from unethical and potentially misleading lawyer advertising and preserving the ethical integrity of the legal profession.

2.      *Narrowly Drawn to Materially Advance the Asserted Interests*

The second and third prongs of the *Central Hudson* analysis require LADB to demonstrate that the challenged rules are narrowly drawn to materially advance the asserted substantial interests. *Edenfield*, 507 U.S. at 770. To show that a regulation materially advances a substantial interest, LADB must "demonstrate[] that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 771 (invalidating regulations supported only by a "series of conclusory statements"). It may do so with empirical data, studies, and anecdotal evidence. *Fl. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (internal citations and quotation marks omitted); *see also Moore v. Morales*, 63 F.3d 358, 362–63 (5th Cir. 1995). The evidence on which it relies need not "exist pre-enactment." *Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 410 (5th Cir. 2007). It may also "pertain[] to different locales altogether." *Went For It*, 515 U.S. at 628. This requirement may also be satisfied with "history, consensus, and simple common sense." *Id.* (internal citation and quotation marks omitted).

Finally, to show that a regulation is narrowly drawn, LADB must demonstrate that it is "not more extensive than is necessary to serve that interest." *W. States Med. Ctr.*, 535 U.S. at 367 (internal quotation omitted); *see also Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 472 (1988); *In re R.M.J.*, 455 U.S. at 203; *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989). A regulation that fails *Central Hudson* because of a lack of sufficient evidence may be enacted validly in the future on a record containing more or different evidence. *See Alexander*, 598 F.3d at 92.

11

a.      Rule 7.2(c)(1)(D): Past Results

Rule 7.2(c)(1)(D) prohibits communications "containing a reference or testimonial to past successes or results obtained." The plain language of this rule imposes a blanket ban on all references or testimonials to past results in attorney advertisements.[5] The court will analyze this prohibition under *Central Hudson* and determine whether the "character of [the prohibited] statements creates a state interest sufficiently substantial to justify a categorical ban." *Peel v. Att'y Disciplinary Comm'n of Il.*, 496 U.S. 91, 100 (1990).

Rule 7.2(c)(1)(D) prohibits statements "of opinion or quality and . . . [those] of objective facts that may support an inference of quality." *Id.* at 101. A statement that a lawyer has tried 50 cases to a verdict, obtained a $1 million settlement, or procured a settlement for 90% of his clients, for example, are objective, verifiable facts regarding the attorney's past professional work. Conversely, statements such as "he helped me," "I received a large settlement," or "I'm glad I hired her" constitute subjective and unverifiable references.

It is well established that the inclusion of verifiable facts in attorney advertisements is protected by the First Amendment. *Zauderer*, 471 U.S. at 647–49 (permitting the use of an accurate illustration in an attorney advertisement); *In re R.M.J.*, 455 U.S. at 205–06 (permitting disclosure, in

---

[5] The prohibition imposed by this rule is not alleviated by the clause permitting attorneys to provide this information "upon request." The rules do not clearly identify what qualifies as a "request" under this rule, but it appears to include requests by potential clients for "information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm" (Rule 7.9(b)) and information provided on web pages "controlled, sponsored, or authorized by a lawyer or law firm and that contain information concerning the lawyer's or law firm's services" (Rules 7.6(b) and (b)(3)). Unsolicited advertising obviously targets a different audience than do advertising materials that are distributed in response to a specific request. The rules of professional conduct cannot "ban certain speech merely because it is more efficient" at targeting potential clients. *Shapero*, 486 U.S. at 473–74.

capital letters, of admission to practice before the United States Supreme Court in advertisement). "[A] State [cannot] . . . prevent an attorney from making accurate statements of fact regarding the nature of his practice merely because it is possible that some readers will infer that he has some expertise in that area." *Zauderer*, 471 U.S. at 640 n.9. Even if, as LADB argues, the prohibited speech has the potential for fostering unrealistic expectations in consumers, the First Amendment does not tolerate speech restrictions that are based only on a "fear that people would make bad decisions if given truthful information." *W. States Med. Ctr.*, 535 U.S. at 359. "It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us." *Va. Bd. of Pharmacy*, 425 U.S. at 770; *see also Bates*, 433 U.S. at 374–75 (rejecting arguments that "the public is not sophisticated enough to realize the limitations of advertising, and that the public is better kept in ignorance than trusted with correct but incomplete information"). To the extent that Rule 7.2(c)(1)(D) prevents attorneys from presenting "truthful, non-deceptive information proposing a lawful commercial transaction," it violates the First Amendment. *Edenfield*, 507 U.S. at 765.

"[A]dvertising claims as to the quality of services . . . [that] may be not susceptible of measurement or verification . . . may be so likely to be misleading as to warrant restriction." *Bates*, 433 U.S. at 383–84. LADB bears the burden to show that the unverifiable statements prohibited by Rule 7.2(c)(1)(D) are so likely to be misleading that it may prohibit them. To do so, LADB relies on selected responses from the two Louisiana surveys: (1) 83% of the interviewed public did not agree "client testimonials in lawyer advertisements are completely truthful"; (2) 26% agreed that lawyers endorsed by a testimonial have more influence on Louisiana courts; (3) 40% believe that lawyers are, generally,

"dishonest"; and (4) 61% believe that Louisiana lawyer advertisements are "less truthful" than advertisements for other items or services.

These responses are either too general to provide sufficient support for the rule's prohibition or too specific to do so. The general responses indicate that the public has a poor perception of lawyers and lawyer advertisements. However, they fail to point to any specific harms or to how they will be alleviated by a ban on testimonials or references to past results. *Edenfield*, 507 U.S. at 771. The more specific survey responses provide information regarding client testimonials, but do not shed light on the rule's prohibition of only those testimonials specifically discussing the attorney's past results or of all mere "references" to past results in unsolicited advertisements. They might be read to show that a majority of the Louisiana public may be unswayed by testimonials—perhaps demonstrating that they are a poor advertising choice—but not that banning only those testimonials that relate to past results will "ensur[e] the accuracy of commercial information in the marketplace" or is required to uphold ethical standards in the profession. *Id.* Only a minority of survey respondents agreed that attorneys employing testimonials in their advertisements have greater influence on the courts, and the ambiguity of the question posed to them leaves open the possibility that they were expressing a belief that these attorneys could obtain better results, not a belief that they would do so *improperly*.

"Given the state of this record—the failure of the Board to point to any harm that is potentially real, not purely hypothetical—we are satisfied that the Board's action is unjustified." *Ibanez v. Fl. Bd. of Accountancy*, 512 U.S. 136, 146 (1994). The evidence is insufficient to show that unverifiable claims in the targeted speech are so likely to be misleading that a complete prohibition is

14

appropriate.  LADB has not met its burden under the second prong of *Central Hudson* to show that prohibiting all references or testimonials to past results in advertisements will materially advance the State's asserted interests in preventing consumer deception or setting standards for ethical conduct by Louisiana lawyers.

LADB also fails to satisfy the third prong of *Central Hudson*: establishing that the prohibition in Rule 7.2(c)(1)(D) is "no more extensive than reasonably necessary to further [its] substantial interests." *Fox*, 492 U.S. at 477.  The only evidence LADB submits on this point is the LSBA Committee's conclusory statement that a disclaimer could not alleviate its concerns regarding references or testimonials to past results.  An unsupported assertion is insufficient to satisfy LADB's burden.  *Edenfield*, 507 U.S. at 771 (invaliding rule because the record "contain[ed] nothing more than a series of conclusory statements").  The LSBA Committee also failed to explain how this speech differs from speech that it found could be appropriately and effectively addressed by a disclaimer.  *See, e.g.*, Rule 7.2(1)(c)(I).

A disclaimer may be an acceptable way to alleviate the consumer deception that could result from this type of advertising.  *See Bates*, 433 U.S. at 375; *see also Shapero*, 486 U.S. at 477–78 (indicating that States could enact less-restrictive measures to prevent deception, such as requiring an advertisement to be identified as such or to include instructions on how to report an inaccurate or misleading letter); *Zauderer*, 471 U.S. at 652 (indicating that State could require contingent fee advertisements to disclose client responsibility for costs in an unsuccessful suit to prevent misconception that clients had no obligations); *Peel*, 496 U.S. at 117 (Marshall, J. concurring) (noting that, to prevent confusion caused by an attorney's claim to certification by the National Board of Trial

Advocacy, a State could require the advertisement to set forth the certification requirements or note that the board is not affiliated with or sanctioned by the government).

### b.    Rule 7.2(c)(1)(J):  Portrayals of a Judge or Jury

Rule 7.2(c)(1)(J) prohibits attorney advertisements that "include[] the portrayal of a judge or a jury."  LADB argues that this rule targets only speech that is inherently misleading because the inclusion of a judge or a jury in an attorney advertisement "impli[es] that a lawyer has undue influence with a judge or jury" and because an actual sitting judge or an impaneled jury could not participate in an advertisement.  As discussed above, this court holds that a depiction of a judge or jury in a lawyer advertisement is not inherently misleading.  LADB's argument to the contrary is based on an assumption that Louisianians are insufficiently sophisticated to avoid being misled by a courtroom not devoid of its normal occupants. The Supreme Court has explicitly instructed courts to reject such arguments when reviewing regulations of attorney advertising. *Bates*, 433 U.S. at 374–75 (rejecting attorney advertising restrictions based only a belief that "the public is not sophisticated enough to realize the limitations of advertising").  The court's decision on this issue is in accord with the Second Circuit's recent treatment of a New York ban on the portrayal of a judge in attorney advertisements. *Alexander*, 598 F.3d at 89.

Because the speech targeted by Rule 7.2(c)(1)(J) is only potentially misleading, the court undertakes a *Central Hudson* analysis of its restrictions. We conclude that the evidence submitted by LADB does not satisfy the second or third prongs of this test.  First, LADB "has not demonstrated that the ban imposed by this rule advances its asserted interests in any direct and material way."  *Edenfield*, 507 U.S. at 771.  There is no argument or evidence in the

16

record connecting the "common sense observation" that "a communication that states or implies that the lawyer has the ability to influence improperly a court is likely to be false, deceptive, or misleading" to portrayals of a judge or jury in attorney advertisements generally. *Alexander*, 598 F.3d at 93 (internal quotation marks omitted). Second, the only evidence on the record to support narrow tailoring is the LSBA Committee's statement that "a disclaimer would not be able to cure or prevent the conduct from misleading and/or deceiving the public" and that Rule 7.2(c)(1)(D) is "narrowly-tailored to address the harm in question and to achieve the desired objective of protecting the public from false, misleading and/or deceptive advertising." The committee did not support these assertions with evidence or explanation and "[t]he record does not disclose any . . . evidence . . . that validates the[se] suppositions." *Edenfield*, 507 U.S. at 771. LADB has failed to demonstrate that its prohibition is "no more extensive than reasonably necessary" *Fox*, 492 U.S. at 477.

c.   Rule 7.2(c)(1)(L): Nicknames or Mottos that State or Imply an Ability to Obtain Results

Rule 7.2(c)(1)(L) prohibits attorney advertising communications "utilizing a nickname, moniker, motto or trade name that states or implies an ability to obtain results in a matter." The district court analyzed this rule under *Central Hudson* and concluded that it "materially advances the State's interest in preventing deception of the public, and is narrowly tailored to meet those ends." *Public Citizen*, 642 F. Supp. 2d at 557–58. This court undertakes the same analysis and arrives at the same conclusion.

To meet its burden to show that it has satisfied *Central Hudson*, LADB relies on the results of the two Louisiana surveys and three focus groups. Questions regarding the use of nicknames or mottos in attorney advertisements constituted approximately 50% of both surveys. In the telephone survey,

17

members of the public were read nine specific mottos employed in Louisiana lawyer advertisements. The surveyors asked which of the nine mottos each participant recognized and then asked a series of questions about the effect of the advertisements containing mottos they recognized on their perceptions of Louisiana lawyers, Louisiana courts, and the advertising lawyer's ability to obtain results for clients. The internet survey of Bar Members used the same format and similar, but not identical, questions. The focus group participants were shown eight Louisiana attorney television advertisements and engaged in a group discussion of each advertisement.

The telephone survey showed that 59% of the public agreed that the advertisements implied that the featured attorneys can manipulate Louisiana courts and 32% agreed that these lawyers had greater influence over Louisiana courts. In addition, 61% of the public agreed that these advertisements promised that the lawyer would achieve a positive result and 78% of Bar Members agreed that they implied that the lawyers could obtain favorable results regardless of facts or law. Of the Bar Members surveyed, 66% agreed that these advertisements were implicitly misleading and 76% disagreed that the public was not misled by these advertisements. When various mottos were discussed within the focus groups, participants said that they viewed them negatively and found them to be misleading.

The court is satisfied that there is reliable and specific evidence on the record sufficient to support the restriction imposed by Rule 7.2(c)(1)(L).[6] First,

---

[6] The other responses highlighted by LADB show that 40% of the public believes that lawyers are, generally, "dishonest;" 56% think lawyer advertising in Louisiana is generally "misleading," and 61% find Louisiana lawyer advertisements "less truthful" than advertisements for other items or services. Evidence that a portion of the public views Louisiana lawyers as generally dishonest and their advertisements as less truthful than those for other services is too general to support the specific restriction imposed by Rule 7.2(b)(1)(L).

the survey and focus group responses consistently reveal that the advertisements containing these mottos misled the public, improperly promised results, and implied that the advertising lawyers could manipulate Louisiana courts. Second, they present the perceptions of a significant number of people from each of the two pools of respondents. One-half of each survey was directed at the use of mottos and nicknames in attorney advertisements. Participants were either shown existing attorney advertisements making use of mottos or asked whether they recognized specific mottos. Finally, the questions asked about the shown or recognized advertisements were not abstract or hypothetical. They targeted the specific elements of commercial speech implicated by this rule and sought and received the reactions of the public and Bar Members to that type of speech. The result is evidence that directly pertains to and supports the restriction set forth in Rule 7.2(c)(1)(L). The court holds that LADB has met its burden to show that this rule will advance its substantial interest in preventing consumer confusion.[7]

With respect to the third prong of *Central Hudson*, the court finds it important that Rule 7.2(c)(1)(L) restricts the use of only those mottos or nicknames that state or imply an ability to obtain results. It does not prohibit *all* nicknames or mottos in every instance. The Louisiana Supreme Court adopted a rule that, by its very language, targets speech that it identified as potentially or actually misleading to consumers. Under this rule, Louisiana lawyers remain free to employ as many nicknames, monikers, mottos or trade names as they wish, so long as they do not employ those devices to state or imply

---

[7] Because Rule 7.2(c)(2)(L) satisfies *Central Hudson* with respect to the substantial interest in preventing consumer confusion, the court need not address whether it also does so with respect to the substantial interest in preserving the ethical integrity of the legal profession.

an ability to obtain results, thereby misleading the public.  This rule is narrowly drawn to materially advance the substantial government interest in protecting the public from misleading lawyer advertising.

The Second Circuit recently held that a similar rule prohibiting the use of "a nickname, moniker, motto or trade name that implies an ability to obtain results in a matter" in attorney advertisements did not satisfy *Central Hudson*. *Alexander*, 598 F.3d at 94–95.  It acknowledged the "compelling, commonsense argument that, given the uncertainties of litigation, names that imply an ability to obtain results are usually misleading." *Id.* at 94 (citing New York report that "the use of dollar signs, the terms 'most cash' or 'maximum dollars,' or like terms that suggest the outcome of the legal matter" is "likely to be false, deceptive or misleading").  Nevertheless, it struck down the rule because of "a dearth of evidence in the present record" to support a "prohibition on names that imply an ability to get results when the names are akin to, and no more than, the kind of puffery that is commonly seen, and indeed expected, in commercial advertisements generally." *Id.* at 95.  In doing so, the court specifically noted that a regulation that failed *Central Hudson* for want of evidence might lawfully be enacted on a different record. *Id.* at 91–92.  After analyzing the record in this case, the court concludes that LADB has provided the necessary evidence—by means of the Louisiana surveys and focus groups—that the Second Circuit found to be absent from *Alexander*.

The Louisiana Plaintiffs also argue that the portion of Rule 7.2(c)(1)(L) that prohibits mottos that "impl[y] an ability to obtain results in a matter" is unconstitutionally vague because it provides lawyers and disciplinary authorities with no guidance on what sorts of statements run afoul of this ban.[8]

---

[8] They do not raise this argument with respect to the remainder of Rule 7.2(c)(1)(L).

20

In light of the extensive information provided in the  LSBA Committee's
Handbook on Lawyer Advertising and Solicitation (LSBA Handbook), the
argument that Louisiana attorneys have insufficient guidance to enable them
to comply with the rule is misplaced.  The scope of the prohibition is adequately
defined when construed in accordance with the standards set forth in the LSBA
Handbook.[9]  Maintained in accordance with Rule 7.7(a), the LSBA Handbook
provides Louisiana lawyers with significant guidance regarding how the LSBA
Committee interprets Rule 7.2(c)(1)(L).  It describes three categories of mottos
that the LSBA believes state or imply an ability to obtain a result and provides
examples of mottos that fall into each category.[10]  The Handbook also lists five
categories of mottos, again with numerous examples, that do not state or imply
an ability to obtain results and are therefore not prohibited by Rule 7.2(c)(1)(L).[11]

---

[9] The LSBA Handbook is published as a supplement to the *Louisiana Bar Journal*.  It
is also available electronically to both Bar Members and the public at
http://www.lsba.org/MemberServices/LawyerAdvertising/2008-9LawyerAdHandbook.pdf.

[10] A nickname, moniker, motto or trade name will be considered to state or imply an
ability to obtain a result if it:

> 1. States or implies directly a positive result or pattern of positive results. For
> example: "The Smith Law Firm: The Winning Law Firm"; "The Jones Law Firm:
> Losing is Not an Option"; "The Cash Machine Legal Clinic, L.L.C.";

> 2. States or implies the use of means that violate the Louisiana Rules of
> Professional Conduct or other law. For example: "The Johnson Law Firm: We
> Break the Rules for You!"; "The Rule Breaker Firm"; "The Allen Law Firm:
> Winning Has No Boundaries!";

> 3. Makes a comparison with another lawyer, law firm or lawyers in general,
> which cannot be factually substantiated. For example: "The Duke Law Firm:
> Better Than the Rest"; "The Premier Lawyers"; "After you've tried the rest, come
> to the best!".

[11] This Rule does not prohibit the use of nicknames, monikers, mottos or trade names,
which are used to portray a generally-positive impression of the lawyer, law firm or their
services and which reinforce traditional considerations relevant to selecting a lawyer or law
firm. Such considerations may include, but are not limited to, the following:

When narrowly construed, this rule is not impermissibly vague. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1338–39 (2010); *Brazos Valley Coalition for Life, Inc. v. City of Bryan*, 421 F.3d 314, 325 (5th Cir. 2005).

### C.    Applying Rational Basis Review to Disclosure Requirements

The Supreme Court has held that "'warning[s] or disclaimer[s] might be appropriately required . . . in order to dissipate the possibility of consumer confusion or deception.'" *Zauderer*, 471 U.S. at 651 (quoting *In re R.M.J.*, 455 U.S. at 201) (alterations in original). Such disclosure requirements need only be "reasonably related to the State's interest in preventing deception of consumers." *Id.* A lower standard applies "[b]ecause the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides." *Id.* (citing *Va. Bd. of Pharmacy*, 425 U.S. at 748). "[A]ppellant's constitutionally protected interest in *not* providing any particular factual information in . . . advertising is minimal." *Id.*

1.    *Rule 7.2(c)(1)(I): Portrayal of Clients, Scenes, or Pictures Without a Disclaimer*

Rule 7.2(c)(1)(I) prohibits attorney advertisements that "include[] a portrayal of a client by a non-client without disclaimer . . . or the depiction of any events or scenes or pictures that are not actual or authentic without disclaimer."

---

1. Diligence. For example: "We Work Hard For You"; "We're By Your Side";

2. Experience. For example: "Put Our Years of Personal Injury Representation to Work for You";

3. Advocacy. For example: "We Stand Up for You"; "The Jones Law Firm: We're Tenacious; "Is Your Insurance Company Stonewalling? We'll Stand Up for You";

4. Loyalty. For example: "Injured? Feel Alone? We're There for You!"; "The Allen Law Firm: Lawyers Who Care!";

5. Benefits of Representation. For example: "We'll Work Hard to Get You Everything the Law Allows"; "Know Your Rights Before You Settle"; "We'll Look Out for You When Others May Not".

To meet its burden to justify the disclosure requirements imposed by this rule, LADB relies on various responses from the Louisiana surveys. It argues that advertisements that employ reenactments, manufactured pictures, or actors to represent clients, without identifying the use of these devices can be deceptive and decrease public confidence in the Louisiana judicial system. It submits that disclaimers identifying these items will prevent their use from misleading the public or reflecting poorly on Louisiana attorneys and courts.

The survey responses highlighted by LADB indicate that 59% of the public and 63% of Bar Members could not always tell when a testimonial in a lawyer advertisement was provided by an actor rather than a real client. When asked about advertisements containing reenactments of accidents or accident victims, 29% of the public said that the featured attorneys have more influence on Louisiana courts; 54% of Bar Members believe that these advertisements imply that the attorney can obtain a positive result without regard to facts or law. In addition, 59% of the public said that these advertisements decrease their confidence in the integrity of Louisiana lawyers and 78% of Bar Members did not believe that these advertisements raised public opinion of the integrity of Louisiana lawyers. Focus group participants expressed negative opinions of the use of accident scenes and victims in attorney advertisements.

The evidence, combined with the court's "simple common sense," *Went For It*, 515 U.S. at 628, leads this court to conclude, as the district court did, that the disclaimers required by Rule 7.2(c)(1)(I) are reasonably related to the State's interests in preventing consumer deception. *See Public Citizen*, 642 F. Supp. 2d at 556–57. They are also sufficiently related to the substantial interest in promoting the ethical integrity of the legal profession. Rule 7.2(c)(1)(I)'s requirement that attorney advertisements explain when a "client" in an

23

advertisement is portrayed by an actor, when a reenactment is a reenactment, or when a picture or drawing is a reproduction is a reasonable condition and one that is sufficiently related the substantial government interests at play.

2.     *Rule 7.2(c)(10): Format of Disclosures*

Rule 7.2(c)(10) sets forth the following:

> Any words or statements required by these Rules to appear in an advertisement or unsolicited written communication must be clearly legible if written or intelligible if spoken aloud.  All disclosures and disclaimers required by these Rules shall be clear and conspicuous. Written disclosures and disclaimers shall use a print size at least as large as the largest print size used in the advertisement or unsolicited written communication, and, if televised or displayed electronically, shall be displayed for a sufficient time to enable the viewer to easily see and read the disclosure or disclaimer.  Spoken disclosures and disclaimers shall be plainly audible and spoken at the same or slower rate of speed as the other spoken content of the advertisement.    All  disclosures  and  disclaimers  used  in advertisements that are televised or displayed electronically shall be both spoken aloud and written legibly.

The Louisiana Plaintiffs only challenge the portions of this rule that dictate the font size and speed of speech used in disclaimers and requiring that disclaimers be both spoken and written in televised or electronic advertisements.  They argue that these requirements are unduly restrictive and effectively prohibit Louisiana lawyers from using any of the types of speech that must be accompanied by a disclaimer under the Louisiana Rules.  For example, they assert that the font-size requirement results in a disclaimer that is so large that an advertisement can no longer convey its message.  They make a similar argument with respect to the speed-of-speech rule, which they argue results in verbal disclaimers that require so much time that attorneys are unable to effectively use short (ten-to-sixty-second) television or radio advertisements.

The Supreme Court has held that "[u]njustified or unduly burdensome disclosure requirements offend the First Amendment by chilling protected speech, but 'an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers.'" *Milavetz*, 130 S. Ct. at 1339–40 (quoting *Zauderer*, 471 U.S. at 651).

To justify Rule 7.2(c)(10)'s requirements, LADB points to survey responses indicating that the disclaimers required by the previous version of the Louisiana Rules were ineffective at protecting consumers from misleading advertising. Focus group participants complained that disclaimers in lawyer advertisements were spoken too quickly, written in print that was too small, and that there was insufficient time to read them. This is evidence that Louisiana's previous disclaimer requirements were ineffective, but is not evidence that the specific requirements of Rule 7.2(c)(10) will effectively prevent consumer deception. The record is devoid of evidence that Rule 7.2(c)(10)'s font size, speed of speech, and spoken/written provisions are "reasonably related" to LADB's substantial interests in preventing consumer deception and preserving the ethical standards of the legal profession.

In addition, a review of the record shows that the font size, speed of speech, and spoken/written requirements "effectively rule out" an attorney's ability to include one or more of the disclaimer-requiring elements in television, radio, and print advertisements of shorter length or smaller size. To comply with the Louisiana Rules, an attorney advertisement must include, both written in a large font *and* spoken slowly, at least all of the following information: (1) the lawyer's name and office location (Rule 7.2(a)); (2) a client's responsibility for costs (Rule 7.2(c)(6)); (3) all jurisdictions in which the lawyer is licensed (Rule

7.6(b)); (4) the use of simulated scenes or pictures or actors portraying clients (Rule 7.2(c)(1)(I)); and (5) the use of a spokesperson, whether the spokesperson is a lawyer, and whether the spokesperson is paid (Rule 7.5(b)(2)(c)).

In *Ibanez*, the Court struck down as "unduly burdensome" disclosure requirements that "effectively rule[d] out" an attorney's ability to include her specialty "on a business card or letterhead, or in a yellow pages listing." 512 U.S. at 146–47 (citing *Zauderer*, 471 U.S. at 651). The objected-to restrictions in Rule 7.2(c)(10) effectively rule out the ability of Louisiana lawyers to employ short advertisements of any kind. Accordingly, we hold that they are overly burdensome and violate the First Amendment.

## CONCLUSION

For the reasons given above, the opinion of the district court is AFFIRMED with respect to Rules 7.2(c)(1)(E), 7.2(c)(1)(I), and 7.2(c)(1)(L). These rules do not regulate attorneys' commercial speech in a way that violates the First Amendment. With respect to Rules 7.2(c)(1)(D), 7.2(c)(1)(J), and 7.2(c)(10), the judgment of the district court is REVERSED.