# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50284

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2014

Lyle W. Cayce
Clerk

PATRICIA ELLIS,

      Plaintiff - Appellant

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC Civil No. 1-13-CV-399

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In this life insurance benefit dispute Patricia Ellis appeals the district court's grant of summary judgment in favor of her deceased husband's life insurance provider, Reliance Standard Life Insurance Company ("RSL"). The district court held that RSL did not abuse its discretion as a plan administrator when it calculated the death benefit paid to Mrs. Ellis following her husband's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50284

death using his 2009, as opposed to his 2010, income. For the following reasons, we AFFIRM.

## FACTS AND PROCEEDINGS

The late Randolph Ellis was employed by Taylor Morrison Inc., a homebuilding company, as a commissioned real estate salesman starting in 2005. Taylor Morrison offered life insurance to its employees. The insurance was underwritten and administered through RSL. Mr. Ellis began paying premiums on an RSL life insurance policy ("the policy") beginning on January 1, 2008. The policy is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

A. The Policy

The policy pays its beneficiary "[t]wo (2) times earnings, rounded to the next higher $1,000, subject to a maximum of $700,000." "Earnings" is defined under the policy as "the greater of $60,000 or the amount of wages [Taylor Morrison] paid to the insured as reported on his/her W-2 form for the year just before the date of loss." If the W-2 for the year just before the date of loss is for less than a full year, the amount is annualized.

The policy contains two provisions concerning the effects injury or disability have on coverage. These two provisions are the "waiver of premium in event of total disability" provision ("waiver provision") and the "continuation of individual insurance" provision ("continuation provision"). The waiver provision states that RSL will extend insurance in one year increments if the insured meets six criteria:

1) an Insured becomes totally disabled prior to age 60;
2) the Total Disability begins while he/she is insured;

2

No. 14-50284

3) the Total Disability begins while this [p]olicy is in force;

4) the Total Disability lasts for at least 6 months;

5) the premium continues to be paid; and

6) [RSL receives] proof of Total Disability within one (1) year from the date it began.

This extended life insurance coverage pays the beneficiary "the amount that was in force at the time that Total Disability began." That amount cannot increase. Additionally, if an individual qualifies for the waiver provision, neither the employer nor the insured is required to pay premiums and any premiums paid following the disability are refunded.

The continuation provision allows the insured to extend insurance coverage for a period of up to twelve months if the insured continues to pay the premium and the reason for the insured's ineligibility is illness or injury. The continuation provision, therefore, is a gap-filling provision allowing coverage to continue during illness or injury for up to twelve months, so long as premiums are paid. The waiver provision, in contrast, addresses total (i.e. permanent) disability, can be extended in one year increments, and does not require payment of premiums. The policy contains no language suggesting that either the waiver or continuation provision would take precedence in the event an insured qualified for both.

The policy also contains a section addressing "Changes in Amount of Insurance," which covers what circumstances may change the size of the death benefit. This provision requires that an individual must be "Actively at Work" for the amount of the death benefit to change. "Actively at work" is defined as "actually performing on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally

No. 14-50284

performed." "Full-time" is defined as a minimum of 32 hours of work each week.

B.  Mrs. Ellis's Claim for Death Benefits

Mr. Ellis began his policy with RSL in 2008. He was diagnosed with carcinoma (a form of cancer) on August 22, 2010. He stopped working on November 19, 2010. During the 2009 tax year Mr. Ellis earned $144,065.85. During the 2010 tax year Mr. Ellis earned $334,478.99.

On November 19, 2010, Mr. Ellis filed a claim for disability benefits and was subsequently paid such benefits under RSL's short- and long-term disability insurance coverage. He received disability payments from the date of his diagnosis until his death on November 10, 2011.

Absent the application of the waiver or continuation provision, the policy would have been automatically terminated when Mr. Ellis stopped working full-time for Taylor Morrison on November 19, 2010. Taylor Morrison, however, began paying Mr. Ellis's premiums under the continuation provision following his disability. Subsequently, on August 25, 2011, Mr. Ellis applied for a waiver of premium in the event of total disability. At that time, he met the six requirements necessary for the waiver provision to apply. RSL did not officially confirm Mr. Ellis's enrollment in waiver provision benefits until August 2012, many months after his death.

Mr. Ellis died on November 10, 2011. Mrs. Ellis submitted a claim for death benefits on January 4, 2012. Under the policy, RSL paid plaintiff $325,600: two times Mr. Ellis's 2009 income of $147,790.23, rounded up to the nearest thousand, plus a ten percent supplementary payment. RSL calculated the death benefit using Mr. Ellis's 2009 W-2 income because it was the income "in force" when total disability began (i.e., the income indicated on his  W-2

No. 14-50284

from the year prior to his 2010 disability). RSL also paid Mrs. Ellis an additional $29,600 because the waiver provision provides for a supplementary payment of ten percent of the death benefit if death is due to cancer, as it was in Mr. Ellis's case.

C.  Mrs. Ellis's Challenges to the Death Benefit Amount

Mrs. Ellis challenged the amount of the death benefit to RSL on July 24, 2012.  She argued that that the "date of loss" for purposes of determining the death benefit should have been the date of Mr. Ellis's death, November 10, 2011.  Following from this, the death benefit would be calculated using Mr. Ellis's 2010 W-2 income because that was the year prior to Mr. Ellis's death. This change would have resulted in a benefit of $677,000: an increase of over $350,000.

On August 7, 2012, RSL declined to adjust the death benefit paid to Mrs. Ellis. RSL noted that Mr. Ellis began receiving disability payments and stopped working on November 19, 2010, and was later granted the Waiver of Premium in Event of Total Disability benefit. Since the waiver provision states that the amount of insurance will be the amount that was in force at the time that total disability began, the policy required that November 19, 2010 be used as the date of loss. Thus, RSL used the prior year's 2009 W-2 income to calculate the benefit owed. Also on August 7, 2012, RSL, for the first time, confirmed in writing that Mr. Ellis "had qualified" for the waiver provision of the policy starting on November 19, 2010. Mrs. Ellis internally appealed this determination and RSL's Quality Review Unit affirmed the determination of the death benefit on December 19, 2012.

Mrs. Ellis then filed a complaint in the United States District Court for the Western District of Texas on May 14, 2013 pursuant to 29 U.S.C. § 1132(a)(1)(B). Mrs. Ellis again argued that the "date of loss" for the policy

5

No. 14-50284

should be the date of death, not the date of disability, and, therefore, the benefit should have been calculated using Mr. Ellis's 2010 W-2 income.

On February 24, 2014, the district court granted defendant's motion for summary judgment and denied plaintiff's cross-motion for summary judgment. The district court held that plaintiff's argument that "date of loss" referred to death and not to the beginning of total disability was inconsistent with the terms of the policy. It also held that the defendant did not "abuse its discretion or interpret the contract in an unreasonable fashion" when it concluded that the waiver of premium application could be considered in force even if it had not been formally approved before death. Mrs. Ellis appealed the district court's grant of summary judgment to this court on March 24, 2014.

Mrs. Ellis's brief argues that "the Plan abused its discretion in calculating life benefits based on 2009 W-2 earnings instead of 2010 W-2 earnings." The brief reaches this conclusion by presenting two alternative arguments: first, that the policy was continued for twelve months following Mr. Ellis's death under the continuation provision, preventing the application of the waiver provision; and, second, that the waiver provision of the policy must be explicitly approved by RSL before it can be considered to be in effect.

**STANDARD OF REVIEW**

"Standard summary judgment rules control in ERISA cases." *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (quoting *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004)). We review the grant of summary judgment *de novo*, applying the same standard as the district court. *Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 217 (5th Cir. 2011). Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

When the language of a life insurance plan grants the plan administrator discretionary authority to construe the terms of the plan or determine eligibility for benefits, a plan's eligibility determination must be upheld by a court unless it is found to be an abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 110–11 (2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "Regardless of the administrator's ultimate authority to determine benefit eligibility, however, factual determinations made by the administrator during the course of a benefits review will be rejected only upon the showing of an abuse of discretion." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

In the ERISA context, "[a]buse of discretion review is synonymous with arbitrary and capricious review." *Cooper,* 592 F.3d at 652 (5th Cir. 2009). This standard requires only that "substantial evidence support a plan fiduciary's decisions." *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quoting *Meditrust Fin. Servs. Corp.*, 168 F.3d at 215). Moreover, this court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Corry v. Liberty Life Assur. Co. of*

No. 14-50284

*Bos.*, 499 F.3d 389, 398 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc)).  In evaluating a plan administrator's decision under this standard, we may apply a two-step analysis to determine whether it abused its discretion, first determining whether the administrator's decision was legally sound and, if it is not, determining whether the decision was an abuse of discretion.  *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992).

## DISCUSSION

The policy clearly states that RSL "shall serve as the claims review fiduciary . . . [and] has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." As a consequence, RSL is a plan administrator and the court examines its decision for an abuse of discretion.  *High v. E-Systems Inc.*, 459 F.3d 573, 577 (5th Cir. 2006).

Again, the policy provides that the death benefit will be paid in the amount of "[t]wo (2) times earnings, rounded to the next higher $1,000, subject to a maximum of $700,000." "Earnings" is defined as "the amount of wages [Taylor Morrison] paid to the insured as reported on his/her W-2 form for the year just before the date of loss."

"Date of loss" is not defined in the general definition section of the policy. Mrs. Ellis argues that the term is ambiguous in the policy and should be held to mean "date of death." That argument is unpersuasive.  The language in the waiver provision makes clear that the date when coverage under the waiver provision begins is the day that the insured became "Total[ly] Disab[led]," irrespective of the use of the term elsewhere in the contract.

8

No. 14-50284

The waiver provision of the policy states that the "Amount of Insurance continued will be the amount that was in force at the time that Total Disability began," and that this amount will not increase. It follows that the date of loss must be the date of disability under this provision. If the date of loss could be defined as the date of death then it would be possible—exactly as happened in this case—for the amount of insurance to increase if the insured earned more money in the year before death than in the year before disability, but this increase is prohibited by the terms of the waiver provision.

Additionally, at various other points in the policy "date of loss" has different meanings. For example, date of loss as used in the "accidental death and dismemberment" section would include the date of the loss of a hand, foot, or eye. Moreover, the interpretation of "date of loss" relative to the waiver provision to mean "date of disability" is consistent with the "Changes in Amount of Insurance" provision of the policy that requires an insured to be "Actively at Work" for an increase in death benefit payments. If an insured suffers total disability and cannot actively work, then his or her death penalty premium cannot increase from the date when the total disability began.

It is uncontroverted that Mr. Ellis was not "Actively at Work," as defined in the policy, after November 19, 2010. He applied for and received disability payments, which were initially paid under Mr. Ellis's short-term disability coverage and after ninety days (the maximum amount of time covered under short-term disability) converted to long-term disability coverage. Both short and long-term coverage is paid to those who cannot work full-time. Nine months later, in August 2011, he applied under the terms of the waiver provision that required him to be totally disabled.

Thus, RSL reasonably concluded that Mr. Ellis's date of loss was November 19, 2010. This meant that RSL had to look to W-2 income from the

No. 14-50284

previous year, 2009, to calculate the death benefit. RSL, therefore, did not abuse its discretion in determining that the death benefit should be paid based on Mr. Ellis's 2009 W-2. Consequently, the district court did not err in granting RSL's motion for summary judgment.

The arguments in Mrs. Ellis's brief that the waiver provision was not in force at the time of Mr. Ellis's death because of the applicability of the continuation provision or because it was posthumously confirmed in writing are unpersuasive. Though these arguments present alternative interpretations of the policy's relevant provisions, they do not lead to the conclusion that RSL abused its discretion.

Even assuming, *arguendo*, that Mrs. Ellis presented sufficient evidence to establish that Mr. Ellis would have been covered by the continuation provision for twelve months following his disability, nothing in the policy suggests that he could not have begun coverage under the waiver provision while he was still eligible for the continuation of coverage. Indeed, Mr. Ellis's decision to seek coverage under the waiver provision when he could maintain coverage under the continuation provision would have been logical for three reasons. First, the waiver provision, unlike the continuation provision, pays the policy beneficiary an additional ten percent lump sum benefit if the insured is diagnosed as totally disabled due to "Life Threatening Cancer," which Mr. Ellis was. Second, the continuation provision only extends coverage for a maximum of twelve months, and at the time Mr. Ellis applied for the waiver provision he was only three months from the November 2011 expiration of the continuation provision. Third, even though Taylor Morrison was paying Mr. Ellis's premiums, the waiver provision refunds all premiums due or paid after total disability. It is sensible that Mr. Ellis would seek a ten percent increase in coverage, assurance that there would be no gap in coverage between the

10

continuation provision and the waiver provision, and a refund of premium payments to his employer—all of which cost him nothing in additional expense—even if the continuation provision could have been used to maintain coverage for another three months. Mrs. Ellis also argues that the waiver provision did not apply to Mr. Ellis because RSL failed to provide explicit notice that Mr. Ellis was approved for benefits under the waiver provision. Given the language of the waiver provision, however, RSL did not abuse its discretion in concluding that the waiver provision applied to Mr. Ellis as of his application for waiver provision coverage.

The waiver provision sets forth six requirements. Mr. Ellis met all of them. Notice of approval by RSL is not an enumerated requirement. Moreover, the policy explicitly states "[w]e will extend the Amount of Insurance" if the six criteria are met.  Approval, therefore, could reasonably be found to follow automatically if the six conditions are met.

The language cited by Mrs. Ellis, which follows the text setting out the six requirements, stating "[a]fter proof of Total Disability is approved by us, neither you or the insured is required to pay premiums" does not render RSL's decision an abuse of discretion.  This language is best understood to notify the insured that, after approval by RSL, premiums are not required and will be refunded. When compared with the definite statement "[w]e will extend [coverage] if . . ." and six very discrete requirements, the language cited by Mrs. Ellis does not clearly create a seventh requirement that must be satisfied for the waiver provision to take effect.

In fact, this language may suggest the opposite conclusion from Mrs. Ellis's argument. An employer or insured does not pay premiums once an insured qualifies for the waiver provision. The policy also provides that it will return all premiums paid from the start of disability once total disability is

approved. Thus, an individual is considered covered by the waiver provision from the date of total disability, not from the date of formal approval. Were this not the case, an employer or insured would only receive a refund of premiums from the date of approval of the waiver provision, not the date of disability. Again, RSL reasonably determined that the waiver provision applied to Mr. Ellis once the six criteria were satisfied, not upon written approval.

Lastly, if the continuation provision was in force at the time of Mr. Ellis's death instead of the waiver provision (which is not clearly demonstrated by the record), the policy's active work requirement would prohibit an increase in the death benefit. Benefits may only be paid by calculating a beneficiary's income from before the last day she/he "actually perform[ed] on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed." Mr. Ellis received disability benefits—which are paid when one cannot work—between the time his disability began and his death. The record offers no persuasive evidence that Mr. Ellis worked "Full-time" after November 19, 2010.[1]

If, as discussed above, Mr. Ellis did not actively work "Full-time" following his disability, then the amount of the death benefit could not have increased irrespective of whether the continuation or waiver provision applied. It is true, as RSL states in its August 7, 2012, letter, that RSL could have calculated the death benefit using Mr. Ellis's 2010 earnings "if he had ceased to be Totally Disabled and returned to Active, Full-time work in 2011." But,

---

[1] Mrs. Ellis offers some evidence that Mr. Ellis received income after his disability and that he sent e-mails regarding work after his disability. This evidence is not sufficient to create a reasonable inference that Mr. Ellis returned to work "Full-time" as defined by the policy.

since the record does not support that Mr. Ellis returned to work, even if we found that the policy administrator abused its discretion in finding that the waiver provision applied to Mr. Ellis (which we explicitly do not), Mrs. Ellis's appeal would not result in an increase to her death benefit.

RSL did not abuse its discretion by finding that Mr. Ellis was covered by the waiver provision on the day he applied for it in August 2011. Based on this finding RSL reasonably concluded that the "date of loss" for the purpose of calculating the death benefit was the date of Mr. Ellis's disability, November 19, 2010. Since the policy requires calculation of the death benefit using the W-2 from the year prior to the date of loss, RSL also did not abuse its discretion when it calculated Mrs. Ellis's death benefit using Mr. Ellis's 2009 W-2 income.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of RSL.