61 A.3d 930

IN THE MATTER OF THE LETTER DECISION OF THE COMMITTEE ON ATTORNEY ADVERTISING, DOCKET NO. 47–2007.

Argued December 2, 2008—Remanded February 26, 2009— Reargued January 4, 2011—Reargued October 10, 2012—Decided March 14, 2013.

*Robyn M. Hill* argued the cause for appellant Alpha Center for Divorce Mediation.

*Kim D. Ringler* and *Tara Adams Ragone,* Deputy Attorneys General, argued the cause for the Committee on Attorney Advertising (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*David B. Rubin* argued the cause for amicus curiae New Jersey State Bar Association (*Kevin P. McCann,* President, attorney; *Susan A. Feeney,* on the letter brief).

Justice LaVECCHIA delivered the opinion of the Court.

This appeal concerns Rule of Professional Conduct (*RPC*) 7.5, which governs law firm names in New Jersey, and Alpha Center for Divorce Mediation, P.C. (the Center), an entity that operates in multiple states and consists of lawyers and supportive personnel engaged in divorce mediation services. The Center began operating in New Jersey under the trade name that it uses in other jurisdictions, and an issue arose over whether the Center's use of its trade name in New Jersey violated *RPC* 7.5. Ultimately, the Committee on Attorney Advertising (CAA), which opines on such questions in the context of attorney advertising, *see R.* 1:19A–2(a) (granting CAA exclusive jurisdiction to issue advisory opinions on

attorney advertising compliance with *RPC* 7.5), determined that the Center's name violated *RPC* 7.5, and we granted the Center's petition for review of that advisory opinion. *See R.* 1:19A–3(d).

In the course of our review, we undertook a re-examination of *RPC* 7.5 in light of the widespread acceptance of the use of trade names by law firms around the country. As a result of that review, we proposed for comment an amended version of *RPC* 7.5. After receiving few comments on the proposal, we set this matter down for reargument and requested the participation of the New Jersey State Bar Association (the State Bar Association). Having heard argument and having considered the comments we received on the proposal to amend *RPC* 7.5, we now conclude that our policy on law firm trade names should be broadened to allow use of trade names within certain limits.

With this opinion, we adopt the proposed changes, with minor revisions, and order the steps to be taken to implement the amended *RPC* 7.5. To assist with the details of implementing the amendment, there shall be established a committee comprised of a broad array of attorneys, as well as other parties having an interest in promoting the public's need for trade name use to be informative and non-deceptive. A separate order establishing the committee and identifying its assigned agenda will issue following this decision. We also complete our review of the appropriateness of the trade name, Alpha Center for Dispute Resolution, using the revised *RPC* 7.5.

I.

Review of the legality of the Center's trade name began in the context of an advisory opinion issued by the Advisory Committee on Professional Ethics (ACPE). *See R.* 1:19–1 to –9 (granting ACPE with general authority to accept inquiries concerning proper conduct by members of legal profession under RPCs, with certain subject matter exclusions). Advisory Opinion 711, which was published on July 23, 2007, addressed the concerns of an anonymous inquirer who asked whether the Center was operating

within the bounds of the New Jersey Rules of Professional Conduct (the RPCs). While Opinion 711 covered a number of different ethical considerations, it ultimately concluded that " '_____ Center for Divorce Mediation, P.C.,' run by a lawyer and involving other 'affiliated' lawyers, is not a permissible trade name under *RPC* 7.5." [1]

The Center, understandably concerned about Opinion 711's impact, sought review of its trade name question from the CAA. The Center indicated that its "trade name would be used in conjunction with the name of the attorney principally responsible for the office." It also argued that the restriction on its trade name violated the First Amendment of the United States Constitution.

In a letter dated November 28, 2007, the CAA advised the Center that the use of its trade name, even accompanied by an attorney's name, was not permitted by *RPC* 7.5. The CAA explained that "neither 'Alpha' nor 'Center for Divorce Mediation' may be used in the name of a firm that provides legal advice and legal services." It stated:

> The words "Center for Divorce Mediation" describe the nature of the practice, not the lawyers in the firm and so this is not permissible "additional language" under *RPC* 7.5(e) or Opinion 10.... "Alpha," of course, is the first letter of the Greek alphabet but also has connotations of being first. Webster's Third New International Dictionary (3rd ed.1993). In common parlance, the name would be interpreted to mean that it is the "first center for divorce mediation." The word "alpha" does not describe the lawyers in the firm and if it were meant to characterize the services provided by the lawyers it may be viewed as improperly comparative under *RPC* 7.1(a)(3).

The CAA further took the position that "[t]he addition of the managing attorney's name ... is merely an addendum to the trade name ... [and] does not address or cure the problem caused by the trade name itself." Finally, the CAA declined to address the Center's constitutional argument, noting that it had no "power to rule on such constitutional questions." Rather, the CAA ad-

---

[1] Opinion 711 did not disclose the name of the organization under review. However, as later revealed, that opinion concerned the Center.

vised the Center that its constitutional argument would need to be presented to this Court.

The Center then petitioned this Court for review, and in its petition it argued that *RPC* 7.5 did permit the use of a trade name for its organization. In the alternative, the Center argued that a prohibition on its trade name would be a violation of the First Amendment. The Attorney General, on behalf of the CAA, opposed the petition; however, we agreed to review the issues raised by the Center. 195 *N.J.* 514, 950 *A.*2d 902 (2008).

After hearing oral argument on the matter, this Court concluded "that a more developed record [was] necessary for the proper exercise of its regulatory and policy-making role over the practice of law by attorneys in this State." *In re Decision on CAA 47–2007,* 209 *N.J.* 335, 337, 37 *A.*3d 1087 (2009). As such, we ordered the following: (1) we remanded the matter to the CAA "to consider and make recommendations on any additional information, or change in format, that this Court should allow in respect of law firm names"; (2) we directed the CAA to consider the risk to the public and the potential for deception arising from trade name use by attorneys; and (3) we instructed the CAA to "include a full explication of the pros and cons of such action." *Id.* at 337–38, 37 *A.*3d 1087. We further indicated that oral argument may be necessary after the CAA issued its report and recommendations, and we retained jurisdiction. *Id.* at 338, 37 *A.*3d 1087.

The CAA filed a report entitled "Recommendations on Law Firm Names" on June 18, 2010. In preparing the report, the CAA "requested and received written comments and held a public hearing." The CAA also "reviewed the rules . . . and considered variations on law firm names with additional information or descriptive language." Further, the CAA "considered whether there should be special rules for legal practices that can be performed by non-lawyers, such as providing arbitration and mediation services." Ultimately, the CAA concluded that the rules should remain the same and that "the name or names of an attorney with a law firm should remain as the *sole* official designation of a New

Jersey law firm." (Emphasis added). Additionally, the CAA determined that the rules should apply even to legal practices specializing in arbitration or mediation.

We entertained oral argument after the CAA's report was published and thereafter issued a Notice to the Bar on April 6, 2011, seeking comments on the proposed changes to *RPC* 7.5 that were developed in the wake of those proceedings. *Notice to the Bar, Use of Trade Names—Proposed Amendments to RPC 7.5,* 204 *N.J.L.J.* 139 (Apr. 11, 2011). The Notice stated that

[t]he Supreme Court is seeking comments on proposed amendments to *RPC* 7.5 ("Firm Names and Letterheads") of the Rules of Professional Conduct relating to the use of trade names. The proposed amendment would be to paragraph [ (e) ] of *RPC* 7.5 as follows (with proposed new text shown by underscoring):

(e) A law firm name may include additional identifying language such as "& Associates" only when such language is accurate and descriptive of the firm. *Use of a trade name shall be permissible so long as it describes the nature of the firm's legal practice in terms that are accurate, descriptive, and informative, but not misleading, comparative, unprofessional, or suggestive of the ability to obtain results. Such trade names should be accompanied by the name of the attorney who is responsible for the management of the organization.* Any firm name containing additional identifying language such as "Legal Services" or other similar phrases shall inform all prospective clients in the retainer agreement or other writing that the law firm is not affiliated or associated with a public, quasi-public or charitable organization. However no firm shall use the phrase "legal aid" in its name or in any additional identifying language.

The amended rule would be accompanied by an official comment in order to provide the bar with illustrative examples, as follows:

*Official comment (2011): By way of example, "Millburn Tax Law Associates, John Smith, Esq." would be permissible under the trade name provision of this rule, as would "Millburn Personal Injury Group, John Smith, Esq." However, neither "Best Tax Lawyers" nor "Tax Fixers" would be permissible, the former being comparative and the latter being unprofessional.*

We also invited the State Bar Association to participate as amicus curiae. The State Bar Association submitted a letter brief expressing its opposition to any proposed change to *RPC* 7.5.

After receiving public comments, this Court again heard oral argument on the matter. At issue were the proposed changes to *RPC* 7.5 and the application of either the current or proposed rule to the Center. This opinion follows our consideration of that final

round of argument and comment on the proposed change to our policy on the use of trade names by law firms in New Jersey.

## II.

### A.

■ The Rules of Professional Conduct stand as the ethical guideposts for lawyers in New Jersey. "The RPCs were initially adopted in 1984 on the advice of a special Supreme Court Committee assigned to study the American Bar Association's Model Rules of Professional Conduct." Kevin H. Michels, *New Jersey Attorney Ethics* § 1:2–1, at 4 (Gann 2012). That committee, known as the Debevoise Committee, prepared a report that "recommended some of the Model Rules for adoption verbatim, while recommending the modification of others." *Ibid.* This Court adopted many of the Debevoise Committee recommendations but also added some of our own changes. *Ibid.* Separately, we adopted the "rules governing attorney advertising, *RPCs* 7.1 through 7.5." *Id.* § 1:2–1, at 5. Those rules were "recommended by an independent special committee on attorney advertising." *Ibid.*

Since the initial adoption of the RPCs, revisions have been made from time to time. On certain occasions, reviews of the American Bar Association (ABA) standards for professional conduct have triggered wholesale re-examination and updating of the RPCs. In 2002, the Pollock Commission, chaired by retired Associate Justice Stewart Pollock, made a number of recommended revisions to the RPCs in response to the ABA's "Ethics 2000" Commission. *Ibid.* "After a comment period and a public hearing, [this] Court adopted extensive amendments to the RPCs . . . ." *Ibid.* In addition to such examples of comprehensive reviews of the RPCs prompted by changes to the ABA model standards, our RPCs regularly are reviewed by the Professional Responsibility Rules Committee in its Rules Cycle Reports. This Court follows a fairly standard procedure for reviewing an individual Rule or set of RPCs, even should the need for such a review arise in the course of litigation

or as part of regular review of the rules. *See, e.g., On Petition for Review of Opinion 475*, 89 *N.J.* 74, 78, 444 *A.*2d 1092 (1982) (noting that "[o]ur traditional method of rule evaluation is by reference to Supreme Court Committee, report and recommendation by that committee, and finally, a decision by this Court"), *appeal dismissed, sub nom. Jacoby & Meyers v. Supreme Court of N.J.*, 459 *U.S.* 962, 103 *S.Ct.* 285, 74 *L.Ed.*2d 272 (1982) [hereinafter *"Opinion 475"*]. Thus, the history to the RPCs is replete with examples of re-examinations that have led to the addition, deletion, or amendment of the RPCs.

At issue in this case is *RPC* 7.5, which governs the advertising of law firms in this state. *RPC* 7.5 provides that

(a) A lawyer shall not use a firm name, letterhead, or other professional designation that violates *RPC* 7.1. Except for organizations referred to in *R.* 1:21–1(e), the name under which a lawyer or law firm practices shall include the full or last names of one or more of the lawyers in the firm or office or the names of a person or persons who have ceased to be associated with the firm through death or retirement.

(b) A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction. In New Jersey, identification of all lawyers of the firm, in advertisements, on letterheads or anywhere else that the firm name is used, shall indicate the jurisdictional limitations on those not licensed to practice in New Jersey. Where the name of an attorney not licensed to practice in this State is used in a firm name, any advertisement, letterhead or other communication containing the firm name must include the name of at least one licensed New Jersey attorney who is responsible for the firm's New Jersey practice or the local office thereof.

(c) A firm name shall not contain the name of any person not actively associated with the firm as an attorney, other than that of a person or persons who have ceased to be associated with the firm through death or retirement.

. . . .

(e) A law firm name may include additional identifying language such as "& Associates" only when such language is accurate and descriptive of the firm. Any firm name including additional identifying language such as "Legal Services" or other similar phrases shall inform all prospective clients in the retainer agreement or other writing that the law firm is not affiliated or associated with a public, quasi-public or charitable organization. However, no firm shall use the phrase "legal aid" in its name or in any additional identifying language.

(f) In any case in which an organization practices under a trade name as permitted by paragraph (a) above, the name or names of one or more of its principally responsible attorneys, licensed to practice in this State, shall be

displayed on all letterheads, signs, advertisements and cards or other places where the trade name is used.

*RPC* 7.5 must be read in conjunction with *RPC* 7.1, which concerns attorney advertising and states that

(a) A lawyer shall not make false or misleading communications about the lawyer, the lawyer's services, or any matter in which the lawyer has or seeks a professional involvement. A communication is false or misleading if it:

(1) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

. . . .

(3) compares the lawyer's services with other lawyers' services. . . .

[*RPC* 7.1.]

The Center, both in its submissions and at oral argument, has argued that *RPC* 7.5 is unconstitutional under the First Amendment. Moreover, the Center contends that *RPC* 7.5 lacks synchronicity with the trend in most other states to allow trade name use and urges this Court to adopt the proposed amendment to adapt our RPCs to a changing practice. The State Bar Association counters that *RPC* 7.5 is constitutional and, accordingly, there is no reason to alter the rule. The CAA agrees, arguing that *RPC* 7.5 is constitutional and that no change is necessary.

### B.

In *Friedman v. Rogers*, the United States Supreme Court upheld the constitutionality of a Texas law prohibiting "the practice of optometry under a trade name." 440 *U.S.* 1, 3, 99 *S.Ct.* 887, 890, 59 *L.Ed.*2d 100, 106 (1979). The Court recognized that "there is a significant possibility that trade names will be used to mislead the public." *Id.* at 13, 99 *S.Ct.* at 896, 59 *L.Ed.*2d at 112. Ultimately, the Court found that the prohibition of trade names was constitutionally permissible because the regulation furthered the "State's interest in protecting the public from the deceptive and misleading use of optometrical trade names." *Id.* at 15, 99 *S.Ct.* at 897, 59 *L.Ed.*2d at 113. The Court reasoned that "the factual information associated with trade names [could still] be

communicated freely and explicitly to the public." *Id.* at 16, 99 *S.Ct.* at 897, 59 *L.Ed.*2d at 114.

Since *Friedman,* however, the Supreme Court has established a "four-part analysis" to address regulations in commercial speech cases under the First Amendment. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 *U.S.* 557, 566, 100 *S.Ct.* 2343, 2351, 65 *L.Ed.*2d 341, 351 (1980). First, a court "must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading." *Ibid.* Second, a court must determine "whether the asserted governmental interest is substantial." *Ibid.* Third, if the speech is protected and the governmental interest, in fact, is substantial, a court "must determine whether the regulation directly advances the governmental interest asserted." *Ibid.* Fourth, a court must grapple with the question of whether the regulation "is not more extensive than is necessary to serve that [governmental] interest." *Ibid.*

Of relevance to the matter here, two United States Courts of Appeals have addressed whether attorney-advertising regulations can survive scrutiny under the *Central Hudson* test, reaching opposite results. The United States Court of Appeals for the Second Circuit faced a challenge to New York "rules prohibiting certain types of attorney advertising and solicitation." *Alexander v. Cahill,* 598 *F.*3d 79, 83 (2d Cir.), *cert. denied,* —— *U.S.* ——, 131 *S.Ct.* 820, 178 *L.Ed.*2d 576 (2010). In relevant part, the rules at issue in *Cahill* barred "trade names or nicknames that imply an ability to get results." *Ibid.* The Second Circuit concluded that the prohibition on trade names failed to survive scrutiny under *Central Hudson* because (1) the evidence relied upon failed to support the regulation and (2) the blanket ban on trade names was more restrictive than necessary to address any potentially misleading commercial speech. *Id.* at 94–96. While recognizing that *Friedman* permitted the prohibition of trade names, the *Cahill* court concluded that "[t]here is doubt as to *Friedman*'s continued vitality. *Friedman* preceded *Central Hudson* ... and did not

employ *Central Hudson*'s multi-factor First Amendment analysis." *Id.* at 95.

The United States Court of Appeals for the Fifth Circuit faced a similar challenge to a state rule prohibiting certain attorney advertising. In *Public Citizen, Inc. v. Louisiana Attorney Disciplinary Board,* 632 *F.*3d 212, 219 (5th Cir.2011), the court applied the *Central Hudson* test to a set of Louisiana rules governing attorney advertising. A portion of the rules prohibited "a nickname, moniker, motto or trade name that states or implies an ability to obtain results in a matter." *Id.* at 217. Notably, the Louisiana Association's Rules of Professional Conduct Committee conducted a series of studies to evaluate the need for the rules. *Id.* at 216. The Committee conducted a telephone poll of 600 residents, asking each person about their perception of specific attorney advertising techniques. *Ibid.* The Committee also emailed a questionnaire to 18,000 members of the Bar Association and conducted three focus groups with members of the public. *Ibid.*

As a threshold issue, the Fifth Circuit found that Louisiana had "asserted at least two substantial government[al] interests [for adopting the advertising rules]: protecting the public from unethical and potentially misleading lawyer advertising and preserving the ethical integrity of the legal profession." *Id.* at 220. The court then determined that the Committee's surveys and focus groups contained sufficient reliable evidence to uphold the trade name regulation. *Id.* at 225. The court found it critical that the regulation did "not prohibit *all* nicknames or mottos in every instance"; it only prohibited "those mottos or nicknames that state or imply an ability to obtain results." *Ibid.* For that reason, the court concluded that the rule was "narrowly drawn to materially advance the substantial government interest in protecting the public from misleading lawyer advertising." *Id.* at 225–26. As such, the court upheld the trade name regulation under the *Central Hudson* test. *Id.* at 226.

## C.

Here, the tension between maintaining the status quo and adopting a broadening change to *RPC* 7.5 brings this Court to a crossroad. On the one hand, this Court is mindful that attorney advertising regulations are subject to constitutional scrutiny under the *Central Hudson* test. Further, we appreciate that legal minds can differ on the constitutional question whether use of trade names by law firms may be prohibited as a form of attorney advertising.

On the other hand, the vast majority of other states have adopted RPCs to allow for the use of trade names by law firms.[2] *See, e.g., Cal. Rules of Prof'l Conduct R.* 1–400(A) (2013); *Conn. Rules of Prof'l Conduct R.* 7.5(a) (2012); *Colo. Rules of Prof'l Conduct R.* 7.5(a) (2012); *Fla. Rules of Prof'l Conduct R.* 4–7.9(b) (2013); *Ga. Comp. R. & Regs. St. Bar R.* 7.5 (2012); *Ill. Rules of Prof'l Conduct R.* 7.5(a) (2012); *Mass. Ann. Laws Sup. Jud. Ct. R.* 3.07, *Rules of Prof'l Conduct R.* 7.5(a) (2013); *Pa. Rules of Prof'l Conduct R.* 7.5(a) (2012); *S.D. Codified Laws* § 16–18–app.–7.5(a) (2012); *Va. Rules of Prof'l Conduct R.* 7.5(a) (2012). Indeed, North Carolina has a rule that is substantially similar to the amendment we proposed for comment earlier in the history of this matter:

> A lawyer shall not use a firm name, letterhead, or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not false or misleading in violation of Rule 7.1. Every trade name used by a law firm shall be registered with the North Carolina State Bar for a determination of whether the name is misleading. [*N.C. Rules of Prof'l Conduct R.* 7.5(a) (2012).]

Plainly, many jurisdictions have perceived a benefit to allowing some use of trade names by law firms.[3] We are pointed to no

---

[2] Our research leads us to believe that more than forty states have rules of professional conduct that permit trade name use by law firms.

[3] The ABA Model Rules of Professional Conduct includes a version of *Rule* 7.5 used in many states, which provides:

adverse consequences as a result of the steps taken in those states.

Our evaluation of this matter cannot ignore that most states now allow use of trade names by law firms, and we will not disregard their experience. None of the states that permit use of trade names report any adverse impact to the public. We also recognize the changing and more multijurisdictional nature of the legal profession. On balance, we have become convinced that trade names need not be forbidden in New Jersey and that we should align our law firms' naming options more in keeping with our sister states' recognition that use of trade names can be incorporated in the profession without harm to the public. Further, we do not believe that that step should only be allowed if and when required as a matter of constitutional command. For that reason, we need not reach the First Amendment question posed as to the validity of our current *RPC* 7.5. The abiding concern animating the RPCs governing law firm names and attorney advertising is to ensure that the public is protected from deceptive or misleading communications by attorneys when advertising who they are and the services they provide. The firm's name is undoubtedly part and parcel of the firm's advertising. *See Friedman, supra,* 440 *U.S.* at 11, 99 *S.Ct.* at 895, 59 *L.Ed.*2d at 111 (noting that "trade name is used as part of a proposal of a commercial transaction"); *Opinion 475, supra,* 89 *N.J.* at 85, 444 *A.*2d 1092 (treating trade names as form of commercial speech). That said, the public policy against misleading and deceptive attorney advertising can contin-

---

(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

The ABA, in its most recent review of the Model Rules in 2013, has not changed its version of *Rule* 7.5. *See* American Bar Association, *ABA Commission on Ethics 20/20,* http://www.americanbar.org/groups/professional_responsibility/aba_commission_on_ethics_20_20.html (last visited Feb. 19, 2013).

ue to be advanced notwithstanding the amendment of *RPC* 7.5 to allow for use of trade names as we have proposed.

We conclude that our RPC governing law firm names as a matter of sound policy should be brought in closer alignment with sister jurisdictions. The proposed amended *RPC* 7.5 provides a balanced solution. It permits use of a trade name—but only when accompanied by an attorney's name—and imposes additional limitations on the selection of descriptive language. The rule allows the use of a trade name that provides an accurate and informative description of an attorney's practice while preventing misleading and unethical attorney advertising. Permissible trade names must adhere to the prohibitions against the use of any inherently superlative or comparative language. The express prohibitions in the revised *RPC* 7.5 are consistent with *RPC* 7.1's restrictions on communications concerning a lawyer's service. Thus, the revised *RPC* 7.5 and *RPC* 7.1, in complementary fashion, promote our overriding desire and intent to instill public confidence in the professionalism of attorneys and the dignity entailed in the practice of law in New Jersey.

Accordingly, we now hereby adopt the proposed changes to subsection (e) of *RPC* 7.5, with minor revisions to promote clarity, along with an official commentary to accompany the amended *RPC* 7.5. The amended *RPC* 7.5(e) shall read as follows:

(e) A law firm name may include additional identifying language such as "& Associates" only when such language is accurate and descriptive of the firm. Use of a trade name shall be permissible so long as it describes the nature of the firm's legal practice in terms that are accurate, descriptive, and informative, but not misleading, comparative, or suggestive of the ability to obtain results. Such trade names shall be accompanied by the name of the attorney who is responsible for the management of the organization. Any firm name containing additional identifying language such as "Legal Services" or other similar phrases shall inform all prospective clients in the retainer agreement or other writing that the law firm is not affiliated or associated with a public, quasi-public or charitable organization. However no firm shall use the phrase "legal aid" in its name or in any additional identifying language.

The amended rule shall be accompanied by the following official comment in order to provide the bar with illustrative examples:

Official comment (2013): By way of example, "Millburn Tax Law Associates, John Smith, Esq." would be permissible under the trade name provision of this rule, as would "Millburn Personal Injury Group, John Smith, Esq." However, neither "Best Tax Lawyers" nor "Tax Fixers" would be permissible, the former being comparative and the latter being suggestive of the ability to achieve results.

## III.

As with many significant rule changes, the implementation details concerning execution of the new policy of amended *RPC* 7.5 are exceedingly important. They also are beyond the scope of this opinion, which addresses chiefly the policy change to be effected by the amendment we adopt today. After careful consideration, we have concluded that a special committee should be established to address the various aspects to the introduction of the use of trade names into our legal community. Thereafter, the CAA will be responsible for day-to-day administration of the new rule's application.[4]

The special committee will comprise attorneys, as well as interested public members who have experience in protecting the public from misleading or deceptive practices. The committee should consider whether registration must be or is advised to be required for use of a trade name, thereby providing a mechanism for acquiring prior approval that a name is not misleading, deceptive, or too similar to another firm's trade name; whether such a registration system feasibly can be established and, related thereto, whether a registration fee would be required to cover the administrative expenses of a registration requirement; whether a law firm that uses only the name or names of deceased and retired members of the firm should be required to register such trade names if registration is to be required; and whether a name can

---

[4] The revised *RPC* 7.5 will not become effective until after the committee has undertaken its review and this Court acts on the committee's recommendations. However, we nonetheless apply the revised *RPC* in this dispute over the Center's trade name, as the implementation details have no bearing on the question before us, and the Center is entitled to a resolution of this matter. *See infra* Part IV.

be registered if it is not to be used in an active practice (essentially reserving it from use by other attorneys). Several of these questions suggest themselves from the experience of other states.[5]

In sum, the committee's task is not to consider whether trade names should be allowed, but to assist the Court about aspects of implementation of *RPC* 7.5 that will now allow the use of trade names by law firms. The committee may examine and report back to the Court on any other relevant implementation issues that its study reveals. In that respect, the charge to the committee is nonrestrictive.

## IV.

We turn finally to the application of the new *RPC* 7.5 to the Center whose appeal initiated our review of this subject.

The newly adopted *RPC* 7.5(e) permits the use of descriptors so long as the word choice is accurate, informative, and not misleading. The new rule expressly prohibits the use of superlative or comparative language.

The Alpha Center for Divorce Mediation, in the course of the dispute over the propriety of its name, agreed to include the name of its managing attorney. Thus, we are left to review the remaining aspects of the trade name. The CAA found the use of the terms "Alpha" and "Center for Divorce Mediation" to be inconsistent with the former rule. After we published our revised draft RPC, the CAA took the position that under the revised RPC, if adopted, "Alpha" is still an impermissible descriptor of a practice because it is misleading. The CAA maintains that "Alpha" conveys no accurate information about the practice. To the extent that it has several meanings, its secondary definition denotes

---

[5] The committee is urged to examine the experience of other states in implementing trade name usage by attorneys. It should specifically look at the system adopted in North Carolina, whose rules were considered in the drafting of the amended *RPC* 7.5.

"first" and thereby contravenes the prohibition against superlative descriptors.

The Center, on the other hand, maintains that "Alpha" is not misleading and that because it has multiple meanings it should not be confused with a superlative.

Although the amended *RPC* 7.5 now allows the use of trade names by law firms operating in New Jersey, it does not water down the prior prohibition against attorney advertising that contains superlative descriptions or suggestive comparative language. In our examination of the use of the term "Alpha" in the trade name title of this law firm's practice, we conclude that the word adds no informative content other than serving the impermissible purpose of invoking the notion of primacy. A canvassing of dictionaries for the common meaning of the word supports the CAA's conclusion that the consistent secondary definition of "alpha" is "the first" or "something that is first" among others. *See, e.g., The American Heritage Dictionary of the English Language* 37 (William Morris ed., 1973) (defining "alpha" as "first letter in the Greek alphabet" or "first of anything"); *Webster's Seventh New Collegiate Dictionary* 25 (7th ed.1972) (defining "alpha" as "first letter of the Greek alphabet" or "something that is first"); *Funk & Wagnalls New Comprehensive International Dictionary of the English Language* 41 (Encyclopedic ed.1978) (defining "alpha" as "first letter and vowel in the Greek alphabet" or "beginning or first of anything"). The CAA correctly labeled the term as confusing to say the least and, ultimately, impermissible under the standards animating revised *RPC* 7.5 and the current *RPC* 7.1. We concur in that conclusion and hold that the bar we are establishing under our newly adopted *RPC* 7.5 is transgressed by the use of the term "Alpha" in the Center's trade name.

We further conclude that the remainder of the name, coupled with the inclusion of the name of a managing New Jersey attorney, satisfies the revised *RPC* 7.5.

## V.

The advisory opinion issued by the CAA in this matter is affirmed as modified.

Chief Justice RABNER; JUSTICES ALBIN, HOENS, and PATTERSON; and Judges RODRÍGUEZ and CUFF (both temporarily assigned) join in Justice LaVECCHIA's opinion.

*For affirmed as modified*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, RODRÍGUEZ and CUFF (t/a)—7.

*Opposed*—None.